## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

STEVEN FARMER, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

                                    Case No. 2:23-cv-00397-MIS-KRS

WALMART, INC.,

     Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WALMART INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

**THIS MATTER** is before the Court on Defendant Walmart, Inc.'s Motion to Dismiss Plaintiff's First Amended Class Action Complaint, ECF No. 20, filed October 16, 2023. Plaintiff Steven Farmer filed a Response on November 3, 2023, ECF No. 25, to which Defendant filed a Reply on November 22, 2023, ECF No. 26. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

### I.      Background

Beginning in May 2019, Walmart began selling Surf Tablet Pro touchscreen tablet computers across the country under its private label brand "Onn." Am. Compl. (ECF No. 17) ¶¶ 1, 22, 34, 36. Walmart ultimately offered three models of the Surf Tablet Pro: a 7-inch model that retailed for $59, an 8-inch model that retailed for $64, and a 10.1-inch model that sold for $79; Plaintiff refers to these collectively as the "Class Devices." Id. ¶ 34. The Amended Complaint alleges that "[a]side from their display size, the [8-inch and 10.1-inch models] were equivalent in all relevant respects." Id. (citing Simon Hill, Walmart Onn Android Tablet Review, Digitaltrends.com (Oct. 7, 2019)). It further alleges that "[a]lthough Defendant has updated certain

cosmetic features of all three of these models and increased their prices since the launch of the original Class Devices, the hardware of subsequent Class Devices is equivalent in all respects relevant to this action."  Id. ¶ 35.

In October 2019, Plaintiff purchased a new 8-inch Surf Tablet Pro device from Defendant's store in Las Cruces, New Mexico.  Id. ¶ 22.  Approximately four months later, "black blotches began to appear on the screen of" Plaintiff's device.  Id. ¶ 25.  "Within days the touchscreen went black, causing his Class Device to become unusable."  Id.

To replace his first device, in March 2020, Defendant purchased a second 8-inch Surf Tablet Pro from Defendant's store in Portales, New Mexico.  Id. ¶¶ 22, 25.  "Within days of this purchase, a crack appeared along the bottom of the touchscreen as he was using the replacement tablet and spiderwebbed across the screen, obscuring the display and rendering it nearly impossible to use." Id. ¶ 25.  "Within days of the screen cracking the touchscreen stopped responding, causing his Class Device to become completely unusable."  Id.  Defendant contacted Walmart but was unable to secure refunds.  Id. ¶ 26.

Prior to purchasing the devices, Plaintiff reviewed the packaging which states that the device has a "crystal-clear display" on an "8[-inch] 1280 x 800 resolution LCD touchscreen."  Id. ¶ 23.  The packaging further states that the tablet can be used to "[s]urf, work, socialize, play games or even stream content from the web[,]" id. ¶ 23(a), and encourages the purchaser to "[t]ake it with you—mobile computing has never been easier[,]" id. ¶ 23(b).  Additionally, "Defendant marketed, promoted, and advertised the Class Devices as, among other things, the 'dependable, versatile range of tablets for every household' with a heavy focus on their screen quality."  Id. ¶ 43. "Defendant also touted the 'stunning clarity' of the display[,]" id. ¶ 46 (citing onn. 8" Tablet Pro,

32GB (2020 Model), Walmart.com), and represented that the Class Devices are "perfect for kids[,]" id. ¶ 48 (citing onn. 8" Tablet Pro, 32GB (2020 Model), Walmart.com).

The Amended Complaint alleges that "Plaintiff and thousands of other consumers purchased the Class Devices based on Walmart's representations that they were dependable and versatile tablets offering broad functionality and durable enough to be suitable for children[,]" id. ¶ 49, representations that, according to the Amended Complaint, were "material selling points to Plaintiff[,]" id.

However, the Amended Complaint further alleges that the Class Devices suffer from a "Display Defect" that renders Defendant's marketing false and misleading. Id. ¶ 50. First, the Class Devices' touchscreen is made from poly(ethyl acrylate) ("PEA"), a polymer that is "cheaper than glass, which is far and away the most common touchscreen material, and cheaper than polymers that are commonly used in touchscreens, e.g., polycarbonate (also used to make lenses for glasses) or poly(methyl methacrylate) (also known as plexiglass)." Id. ¶ 57. "PEA is also more susceptible to scratching and fracture than the more commonly used touchscreen materials." Id. "Extensive research was unable to find any examples of PEA being used for a touchscreen application. Compared with the standard choices for touchscreen construction, PEA possesses low impact resistance and tensile strength." Id.

Second, the Class Devices' cases are made of polystyrene. Id. ¶ 58. "This polymer is cheaper than polycarbonate, the polymer most commonly used to construct the cases of portable electronic devices." Id. "Although brittle when unadulterated, most commercial polystyrene contains additives that permit some flexibility—a feature that makes this polymer inappropriate for the Class Devices." Id. "The polystyrene case of the Class Devices lacks interior features that would prevent it from bending and twisting (for example, internal buttresses or ridges) when force

is applied to the device." Id. ¶ 59.  "The touchscreen, which, due to the properties of PEA, is brittle and prone to fracture, needs a rigid case to protect it.  In the absence of a rigid case, even slight bending or twisting of a Class Device can cause the touchscreen to crack."  Id.

Due to the defect, "the Class Device displays are not strong enough to endure the stresses they experience in the course of normal and foreseeable use."  Id. ¶ 60.  It also makes the Class Device touchscreens "prone to black blotching and complete failure."  Id. ¶ 61; see also id. ¶ 62. The Display Defect is latent in nature because is not obvious or ascertainable upon examination, and Defendant did not disclose the Display Defect in any marketing materials or elsewhere.  Id. ¶ 65.

The Amended Complaint alleges that Defendant knew of the Display Defect "no later than late 2019 from customer feedback—in the form of warranty claims, return attempts, and customer reviews to Walmart.com—making clear that the displays were prone to cracking."  Id. ¶ 69; see also id. ¶¶ 77-82.  However, it did not disclose this information to consumers.  Id. ¶¶ 69, 83.

Defendant provides owners of defective Class Devices the option to return their tablets within thirty days for a replacement.  Id. ¶ 85.  The Class Devices also come with a one-year Limited Warranty which warrants against defects and promises to replace or repair a defective part at no charge or, if the unit is unrepairable, to replace the unit.  Id. ¶ 91.  However, Defendant expressly excludes display damage from the Limited Warranty, so purchasers of defective Class Devices are unable to obtain a replacement or repair after the thirty-day return period.  Id. ¶ 87. The Amended Complaint alleges that the Limited Warranty is unconscionable and unenforceable because, inter alia, "Defendant knowingly sold a defective product without informing consumers of the existence of the Display Defect."  Id. ¶ 94.

On August 28, 2023, Plaintiff filed the operative First Amended Class Action Complaint ("Amended Complaint") on behalf of a nationwide class of "[a]ll persons in the United States who purchased a Class Device[,]" id. ¶ 100, and a subclass of "[a]ll persons in New Mexico who purchased a Class Device[,]" id.  The Amended Complaint contains seven causes of action, as follows:

- Plaintiff's "First Cause of Action" alleges that Defendant violated New Mexico's Unfair Practices Act ("UPA"), N.M. Stat. Ann. § 57-12-1, et seq., id. ¶¶ 108-18 ("Count I");

- Plaintiff's "Second Cause of Action" alleges that Defendant violated New Mexico's False Advertising Act, N.M. Stat. Ann. § 57-15-1, et seq., id. ¶¶ 119-26 ("Count II");

- Plaintiff's "Third Cause of Action" alleges that Defendant violated the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., id. ¶¶ 127-42 ("Count III");

- Plaintiff's "Fourth Cause of Action" alleges that Defendant breached an express warranty, id. ¶¶ 143-62 ("Count IV");

- Plaintiff's "Fifth Cause of Action" alleges that Defendant breached the implied warranty of merchantability, id. ¶¶ 163-75 ("Count V");

- Plaintiff's "Sixth Cause of Action" alleges "fraudulent concealment," id. ¶¶ 176-89 ("Count VI"); and

- Plaintiff's "Seventh Cause of Action" alleges unjust enrichment, id. ¶¶ 190-95 ("Count VII").

The Amended Complaint asserts that the Court has personal jurisdiction over Defendant "because it has sufficient minimum contacts in this District to render the exercise of jurisdiction by this Court proper and . . . Plaintiff's claims arise out of Defendant's contacts with New Mexico . . . ." Id. ¶ 20.

5

On October 16, 2023, Defendant filed the instant Motion to Dismiss the Amended Complaint for lack of standing, lack of personal jurisdiction, and failure to state a claim.  ECF No. 20.  Plaintiff filed a Response, ECF No. 25, to which Defendant filed a Reply, ECF No. 26.

## II.    Legal Standard

### a.  Lack of Subject Matter Jurisdiction (Standing)

Article III of the U.S. Constitution limits the judicial power of the federal courts so that they may only exercise jurisdiction over justiciable "Cases" and "Controversies."  U.S. Const. art. III, § 2; see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992); Protocols, LLC v. Leavitt, 549 F.3d 1294, 1298 (10th Cir. 2008).  "The case-or-controversy requirement 'is satisfied only where a plaintiff has standing.'"  Protocols, 549 F.3d at 1298 (quoting Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008)).  "In essence[,] the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  Whether a plaintiff has Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit."  Id.  To establish standing, a plaintiff must show: "(1) 'an injury in fact that is both concrete and particularized as well as actual or imminent'; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision."  Protocols, 549 F.3d at 1298 (quoting Wyoming ex rel. Crank v. United States, 539 F.3d 1236, 1241 (10th Cir. 2008)).

Because standing is jurisdictional, a motion to dismiss for lack of standing is properly asserted under Federal Rule of Civil Procedure 12(b)(1).  See Colo. Env't Coal. v. Wenker, 353 F.3d 1221, 1227 (10th Cir. 2004).  Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the

complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F .3d 1173, 1180 (10th Cir. 2002). A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995) abrogated on other grounds by Cent. Green Co. v. United States, 531 U.S. 425, 437 (2001). "In reviewing a factual attack, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends, which does not allow a reviewing court to presume the truthfulness of the complaint's factual allegations." Pueblo of Jemez v. United States, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (internal quotation marks and citation omitted). "Instead, it gives the court wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." Id. (internal quotation marks and citation omitted).

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

**b.  Lack of Personal Jurisdiction**

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). "Jurisdiction of the district court over a nonresident defendant in a suit based on diversity is determined by the law of the forum state." Wenz v. Memery Crystal, 55 F.3d 1503, 1506 (10th Cir. 1995) (citations omitted). The Court must "initially determine whether the exercise of jurisdiction is sanctioned by the [New Mexico] long-arm statute, which is a question of state law, . . . and then determine whether the exercise of jurisdiction

7

comports with the due process requirements of the Constitution." Id. at 1506-07 (citations omitted).

New Mexico's long-arm statute "is coextensive with constitutional limitations imposed by the Due Process Clause." Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006) (citing Tercero v. Roman Catholic Diocese, 48 P.3d 50, 54 (N.M. 2002)). "Thus, if jurisdiction is consistent with the Due Process Clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant." Id.

Exercising jurisdiction over a nonresident defendant comports with the Due Process Clause "'if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting Int'l Shoe, 326 U.S. at 316) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

"Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 903 (10th Cir. 2017). "General personal jurisdiction means that a court may exercise jurisdiction over an out-of-state party for all purposes." Id. "'A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'" Id. at 904 (quoting Goodyear, 564 U.S. at 919). "'Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.'" Id. (quoting Benton v. Cameco Corp., 375 F.3d 1070, 1080 (10th Cir. 2004)). "The 'paradigm' forums

in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business." <u>BNSF Ry. Co. v. Tyrrell</u>, 581 U.S. 402, 413 (2017) (quoting <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014)). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" <u>Id.</u> (quoting <u>Daimler</u>, 571 U.S. at 139 n.19).

"Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." <u>Old Republic</u>, 877 F.3d at 904. "Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" <u>Id.</u> (quoting <u>Burger King</u>, 471 U.S. at 476-77). "The minimum contacts necessary for specific personal jurisdiction may be established where 'the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum.'" <u>Trujillo</u>, 465 F.3d at 1218 (quoting <u>In re Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles</u>, 87 F.3d 413, 418 (10th Cir. 1996) (quoting <u>Burger King</u>, 471 U.S. at 472)). "Purposeful direction" requires "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." <u>Dental Dynamics, LLC v. Jolly Dental Grp., LLC</u>, 946 F.3d 1223, 1231 (10th Cir. 2020).

"'The Plaintiff bears the burden of establishing personal jurisdiction over the defendant.'" <u>OMI Holdings, Inc. v. Royal Ins. Co. of Can.</u>, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting <u>Rambo v. Am. S. Ins. Co.</u>, 839 F.2d 1415, 1417 (10th Cir. 1988)). "When a district court rules on

a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citation omitted). The court accepts as true all well-pleaded facts (that are plausible, non-conclusory, and non-speculative) alleged by the plaintiff unless the defendant controverts those facts by affidavit. Shrader v. Biddinger, 633 F.3d 1235, 1248 (10th Cir. 2011). If the defendant controverts facts in the complaint, the plaintiff may make the required showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction. See id.; see also OMI Holdings, 149 F.3d at 1091 ("The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."). The Court resolves factual disputes in the parties' affidavits in the plaintiff's favor. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008).

### c. Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." Id. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or

speculative to plausible." Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).  Generally, "a complaint stating the 'who, what, where, when, and how' of the alleged fraud gives a defendant the requisite level of notice required under Rule 9(b)." Clinton v. Sec. Benefit Life Ins. Co., 63 F.4th 1264, 1277 (10th Cir. 2023).  However, "not every allegation of fraudulent misconduct must be pleaded with particularity for a complaint to survive at the motion to dismiss stage." Id. at 1280.  Rather, "in evaluating the particularity of fraud allegations under Rule 9(b), we must ask whether the complaint, taken as a whole, 'sufficiently apprise[s]' the defendant of its involvement in the alleged fraudulent conduct." Id. (quoting George v. Urban Settlement Servs., 833 F.3d 1242, 1257 (10th Cir. 2016)).

### III.    Discussion

Defendant argues that: (1) Plaintiff lacks standing to pursue class claims concerning products he did not purchase, ECF No. 20 at 4-8; (2) Plaintiff lacks standing to pursue his New Mexico False Advertising Act claim, id. at 8-9; (3) the Court lacks personal jurisdiction over Defendant to the extent the Amended Complaint asserts claims on behalf of unnamed putative class members who did not purchase Class Devices in New Mexico, id. at 9-14; and (4) each cause of action fails to state a claim upon which relief can be granted, id. at 14-23.

In his Response, Plaintiff states that he has abandoned Counts II and III—i.e., his claims under the New Mexico False Advertising Act and Magnuson-Moss Warranty Act.  ECF No. 25 at 3 n.2.  Consequently, the Court will dismiss Counts II and III with prejudice. See Schoggins v. Okla. ex rel. Okla. Highway Patrol, Case No. CIV-21-133-JFH-GLJ, 2023 WL 3184024, at *1 (E.D. Okla. Apr. 12, 2023) (recommending that the court dismiss abandoned claims with

prejudice), report and recommendation adopted, 2023 WL 3182918 (E.D. Okla. May 1, 2023); Khalik v. United Airlines, Civil Action No. 10–cv–01490–DME–MJW, 2010 WL 5068139, at *5 (D. Colo. Dec. 7, 2010) (dismissing with prejudice causes of action that the plaintiff conceded failed to state a claim); Carney v. City & Cnty. of Denver, Civil Case No. 05–cv–00971–REB–PAC, 2006 WL 2884767, at *2 n.1 (D. Colo. Oct. 10, 2006) (dismissing abandoned claim with prejudice).  The Court will address the remaining issues below.

### a.  Standing to pursue claims concerning products Plaintiff did not purchase

First, Defendant argues that Plaintiff lacks Article III standing to pursue claims concerning products that he did not purchase—specifically, the 7-inch and 10.1-inch models of the Surf Tablet Pro, and model-year 2021 tablets.  ECF No. 20 at 4-8 (citation omitted).  It argues that Plaintiff's allegation that (i) the 10.1-inch tablet is "equivalent in all relevant respects" to the 8-inch tablets that he purchased, ECF No. 17 ¶ 34, and (ii) that "the hardware of subsequent Class Devices is equivalent in all respects" to the tablets that he purchased in late 2019 and early 2020, id. ¶ 35, are conclusory and devoid of factual support.  ECF No. 20 at 7.  Defendant further argues that even if those allegations are true, he still lacks standing to assert claims regarding those tablets because the "substantial similarity" doctrine is inconsistent with Article III standing.  Id. (citing Lorentzen v. Kroger Co., 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021)).

Plaintiff initially argues that whether he may represent class members who purchased products that differ from the products he purchased is an issue that should be resolved at the class certification stage.  ECF No. 25 at 5-6 (citing Gisairo v. Lenovo (United States) Inc., 516 F. Supp. 3d 880, 887 (D. Minn. 2021); Johannessohn v. Polaris Indus., No. 16-CV-3348 (PJS/LIB), 2017 U.S. Dist. LEXIS 99843, at *11 (D. Minn. June 27, 2017); Gabriele v. ConAgra Foods, Inc., No. 5:14-CV-05183, 2015 WL 3904386, at *10 (W.D. Ark. June 25, 2015)).  Plaintiff further argues

that, in any event, he has Article III standing to pursue claims concerning products he did not

purchase "because of the substantial similarity between the Class Devices." Id. at 6 (citations

omitted).  He argues that the "majority view" is that a plaintiff has standing to assert claims for

unnamed class members based on products he did not purchase as long as the products and alleged

misrepresentations are substantially similar.  Id. (citations omitted).  Plaintiff further argues that

the Amended Complaint's allegations concerning the substantial similarity between the Class

Devices are not conclusory and include detailed information from an expert, Dr. David Niebuhr,

who evaluated the Class Devices, explained their composition, and demonstrate that "they all

suffer from a common Defect arising from the common use of inappropriate materials and/or

design." Id. at 6-8 (citing Gisairo, 516 F. Supp. 3d at 888; Bechtel v. Fitness Equip. Servs., LLC,

339 F.R.D. 462, 474-75 (S.D. Ohio 2021)).  Finally, Plaintiff distinguishes the cases upon which

Defendant relies. Id. at 8-9.

    In its Reply, Defendant argues that the Court should not defer this issue until the class

certification stage.  ECF No. 26 at 1 (citing Fox v. Saginaw Cnty., 67 F.4th 284, 296-97 (6th Cir.

2023)).  Defendant maintains that the "substantial similarity" doctrine is inconsistent with Article

III standing, id. at 2, and that, in any event, the Amended Complaint does not plausibly allege that

the Class Devices are substantially similar, id.

    To begin with, the Court rejects Plaintiff's argument that this issue is more appropriately

resolved at the class certification stage.  Article III standing "is a threshold issue in every case

before a federal court . . . because the standing issue implicates a federal court's subject-matter

jurisdiction." Cornhusker Cas. Co. v. Skaj, 786 F.3d 842, 851 (10th Cir. 2015) (quotation marks

and citation omitted).  In a putative class action, the Court "must immediately concern itself with

[the named plaintiff's] standing because jurisdictional issues precede the merits." Fox, 67 F.4th at 297.

Here, the Court finds that Plaintiff lacks standing to pursue claims regarding products that he did not purchase. The Article III standing analysis requires a plaintiff to demonstrate that he has suffered an injury-in-fact. See Lujan, 504 U.S. at 560-61. In this regard, Plaintiff alleges that he purchased from Defendant the 8-inch model of the Surf Tablet Pro in October 2019, and another 8-inch model of the Surf Tablet Pro in March 2020. ECF No. 17 ¶¶ 22, 25. He alleges that the 8-inch model of the Surf Tablet Pro contains a defect that rendered his devices useless. Id. ¶¶ 25, 50-62. Although Defendant also alleges that the 7-inch and 10.1-inch models of the Surf Tablet Pro are "equivalent in all relevant respects" to the 8-inch model, id. ¶ 34, and that the hardware of subsequent models "is equivalent in all respects" to the 2019 and 2020 models, id. ¶ 35, Plaintiff did not purchase the 7-inch or 10.1-inch model, or subsequent year models. Because Plaintiff did not purchase the 7-inch or 10.1-inch models or subsequent year models, he has failed to plead that he suffered any injury with regard to those models. Therefore, he cannot establish Article III standing with respect to those models and cannot pursue claims relating to those models. See David v. Volkswagen Grp. of Am., Inc., Civil Action No: 17–11301–SDW–CLW, 2018 WL 1960447, at *3 (D.N.J. Apr. 26, 2018) ("In the context of putative class actions arising out of products liability actions, . . . a plaintiff has standing only for claims related to products he purchased or used.") (citing, e.g., Semeran v. Blackberry Corp., Case: 2:15-CV-00750-SDW-LDW, 2016 WL 406339, at *3 (D.N.J. Feb. 2, 2016) (finding that where plaintiff had purchased only one model of a Blackberry smartphone, but sought to represent a class of consumers who had purchased several other models, plaintiff did not have "standing to pursue a claim that products []he neither purchased nor used did not work as advertised")); Ferrari v. Best Buy Co., Inc., Civil

No. 14–2956 (MJD/FLN), 2015 WL 2242128, at *9 (D. Minn. May 12, 2015) ("[T]he Court concludes that Plaintiff lacks standing to assert claims on behalf of the class for televisions that he did not purchase or advertising that he did not see or rely upon."); Dapeer v. Neutrogena Corp., 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) ("Plaintiff lacks Article III standing to bring claims on behalf of the Neutrogena products he did not purchase because he cannot conceivably allege any injuries from products that he never purchased or used."); Barron v. Snyder's-Lance, Inc., CASE NO. 13–62496–CIV–LENARD/GOODMAN, 2015 WL 11182066, at *17 (S.D. Fla. Mar. 20, 2015) ("[A] named plaintiff in a consumer class action 'cannot raise claims relating to those other products which he did not purchase.'") (quoting Garcia v. Kashi Co., 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014)); Reilly v. Amy's Kitchen, Inc., No. 13–21525–CIV, 2013 WL 9638985, at *2 (S.D. Fla. Dec. 9, 2013) ("Plaintiff only has standing to assert claims based on products she actually purchased."); Toabck v. GNC Holdings, Inc., No. 13–80526–CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013) ("Because Plaintiff alleges that he purchased the TriFlex Vitapak, but not other TriFlex products, he has failed to plead that he suffered any injury with regard to products other than the TriFlex Vitapak."); Granfield v. NVIDIA Corp., No. C 11–05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); Lieberson v. Johnson & Johnson Consumer Cos., Inc., 865 F. Supp. 2d 529, 537 (D.N.J. 2011) ("Because Plaintiff has not alleged that she purchased or used two of the four baby bath products at issue here, Plaintiff cannot establish an injury-in-fact with regard to those products."); Godec v. Bayer Corp., No. 1:10–CV–224, 2011 WL 5513202, at *2 (N.D. Ohio Nov. 11, 2011) ("Because Godec never purchased Men's 50+ Advantage, he has

suffered no injury from any breach of any warranty with regard to that product. Accordingly, he lacks standing to make claims regarding the Men's 50+ Advantage vitamins . . . .").

The Court rejects Plaintiff's argument that he has standing to pursue claims for models of the tablet that he did <u>not</u> purchase because the 7-inch and 10.1-inch models, and the 2021-year models, are substantially similar to the 8-inch model he <u>did</u> purchase in 2019 and 2020. It is fundamentally inconsistent with Article III standing to find that a plaintiff may pursue claims for products he was <u>not</u> injured by, even if the product is substantially similar to those he allegedly <u>was</u> injured by. See <u>Lorentzen</u>, 532 F. Supp. 3d at 908 (observing that "the 'substantial similarity' analysis appears to be inconsistent with the basic concept of standing"). As the Supreme Court has stated:

> It is not enough that the conduct of which the plaintiff complains will injure <u>someone</u>. The complaining party must also show that he is within the class of persons who will be concretely affected. <u>Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.</u>

<u>Blum v. Yaretsky</u>, 457 U.S. 991, 999 (1982) (second emphasis added). See also <u>Griffin v. Dugger</u>, 823 F.2d 1476, 1483 (11th Cir. 1987) ("[The] individual injury requirement is not met by alleging 'that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent.' <u>Warth v. Seldin</u>, 422 U.S. 490, 502 (1975). . . . Moreover, it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."). And as one district court has explained:

> A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely (by buying a similar product or otherwise). Article III "standing is not dispensed in gross." <u>Lewis v. Casey</u>, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); <u>see also</u> <u>Blum v. Yaretsky</u>, 457 U.S. 991, 999, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Importing a "substantial similarity" test into the principle of standing overlooks this point and invites an analysis that is both difficult to apply and unrelated to its objective.

<u>Lorentzen</u>, 532 F. Supp. 3d at 909.  The Court agrees with this analysis and adopts it.

Although Plaintiff cites district court decisions applying the "substantial similarity" analysis, ECF No. 25 at 6, the Court finds those decisions unpersuasive.  The cases Plaintiff cites simply suggest that the "substantial similarity" analysis is the "majority" approach—a characterization that may not be accurate—and blindly apply it without explaining how an individual has standing to seek relief, including compensatory damages, related to a product he did not purchase and did not injure him.  This Court finds the more reasoned approach, supported by the cases cited above, is that an individual lacks standing to assert such a claim.  <u>See</u> <u>Blum</u>, 457 U.S. at 999 (explaining that "a plaintiff who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject").  Consequently, the Court finds that Plaintiff lacks standing to pursue claims regarding the 7-inch and 10.1-inch models, and the 2021-year model, of the Surf Tablet Pro.  All claims related to those models are hereby dismissed for lack of subject matter jurisdiction.  <u>See</u> <u>Semeran</u>, 2016 WL 406339, at *3 (finding that the named plaintiff lacked standing to pursue claims related to BlackBerry smartphone models that he did not purchase and dismissing those claims).

### b. Personal jurisdiction

Next, Defendant argues that the court lacks personal jurisdiction over Defendant to the extent the Amended Complaint asserts claims on behalf of unnamed putative class members who did not purchase Class Devices in New Mexico.  ECF No. 20 at 9-14.  It argues that the Court lacks general personal jurisdiction over Defendant because New Mexico is not its state of incorporation or where its principal place of business is located.  Id. at 10-12.  And it argues that the Court lacks specific personal jurisdiction over claims concerning tablets that were not purchased in New Mexico under the reasoning of the Supreme Court's decision in Bristol-Myers Squibb Co. v. Superior Court, 582 U.S. 255, 267 (2017).  Id. at 13-14 (citing Renne v. NextEra Energy, Inc., Case No. 5:21-cv-04032-HLT-ADM, at *11 (D. Kan. July 25, 2022); Stacker v. Intellisource, LLC, Case No. 20-2581-JWB, 2021 WL 2646444, at *11 (D. Kan. June 28, 2021); Bostick v. Gen. Motors, LLC, 5:19-cv-02451-VAP-SPx, 2020 WL 13283478, at *5 (C.D. Cal. July 22, 2020); Carpenter v. PetSmart, Inc., 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020); Chizniak v. CertainTeed Corp., 1:17-CV-1075 (FJS/ATB), 2020 WL 495129, at *5 (N.D.N.Y. Jan. 30, 2020)).

Plaintiff argues that because it is undisputed that the Court has specific personal jurisdiction over Defendant to the extent the Amended Complaint asserts claims arising out of purchases of the Class Device made in New Mexico, the case should proceed.  ECF No. 25 at 9-10.  He argues that the Supreme Court's decision in Bristol-Myers is distinguishable because the plaintiffs in that case "brought their case as a coordinated mass action pursuant to a device under Section 404 of the California Civil Procedure Code, which has no analogue in the Federal Rules of Civil Procedure."  Id. at 10 (citing Confer v. Milwaukee Elec. Tool Corp., CIVIL ACTION No. 2:23-cv-2028, 2023 U.S. Dist. LEXIS 118273, at *9 (D. Kan. July 10, 2023)).  He argues that "[u]nlike mass tort actions in California, named plaintiffs in a Rule 23 class action earn the right to represent

the interests of absent class members by satisfying all four criteria of Rule 23(a) and one prong of Rule 23(b)." Id. (citing Confer, 2023 U.S. Dist. LEXIS 118273, at *9).  He argues that "Rule 23 rests on the presumption that 'a class action may extend beyond the boundaries of the state where the lead plaintiff brings the case' and that 'nothing in the Rules frowns on nationwide class actions,' even in a forum where defendant is not subject to general jurisdiction." Id. (quoting Confer, 2023 U.S. Dist. LEXIS 118273, at *10 (quoting Mussat v. IQVIA, Inc., 953 F.3d 441, 448 (7th Cir. 2020))).  He argues that the "majority position is that Bristol-Myers does not apply to putative nationwide class action cases like this one that are brought in federal court." Id. (citing Stacker, 2021 WL 2646444, at *8).  Plaintiff further argues that none of the cases Defendant cites "dismiss claims pursuant to Rule 12(b)(2), which is the sole relief that Defendant asks for here[,]" but rather were resolved by striking certain class allegations.  Id. at 10-11.  Plaintiff argues that Defendant cannot make the showing necessary to succeed on a motion to strike class allegations.  Id. at 11.

In its Reply, Defendant argues that the fact that Bristol-Myers was brought as a coordinated mass action rather than a class action is an "immaterial distinction."  ECF No. 26 at 4.  It argues that the courts "are 'bound to follow both the holding and the reasoning . . . of the Supreme Court[,]'" id. (quoting United States v. Sutton, 30 F.4th 981, 987 (10th Cir. 2022)), and "Bristol-Myers's reasoning is plain: plaintiffs with in-state connections cannot, consistent with due process, import in the claims of those whose claims have nothing to do with the forum state[,]" id.

In Bristol-Myers, 678 plaintiffs filed eight separate lawsuits that were consolidated in a mass tort action in California state court asserting California state law claims alleging that the prescription drug Plavix, which was manufactured by the defendant, damaged their health.  582 U.S. at 259.  In total, 592 of the plaintiffs were not residents of California, id., "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and

were not injured by Plavix in California[,]" id. at 264.  The Supreme Court held that California lacked specific jurisdiction over the defendant for claims by out-of-state residents who suffered injuries outside California.  Id. at 265, 268.  It reasoned that under the Fourteenth Amendment's Due Process Clause "there must be an 'affiliation between the forum and the underlying controversy'" which occurs in the forum state, and that the nonresident plaintiffs lacked that affiliation.  Id. at 264 (quoting Goodyear, 564 U.S. at 919).  However, the Supreme Court left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court[,]" id. at 269, and declined to "confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there[,]" id. at 278 n.4 (Sotomayor, J., dissenting).

"Despite the pains that the Supreme Court took to limit [its] decision, litigants have rushed to argue that Bristol-Myers Squibb renders many nationwide class actions constitutionally invalid for lack of specific personal jurisdiction over the defendant with respect to the claims of unnamed class members."  Lyngaas v. Ag, 992 F.3d 412, 434 (6th Cir. 2020).  It appears that most courts to address the issue have concluded that the holding in Bristol-Myers does not apply to federal class actions.  See, e.g., id. (stating that "[t]he vast majority of lower courts have rejected" attempts to extend Bristol-Myers to federal class actions); see also id. at 435; Mussat, 953 F.3d at 445-48; Confer, 2023 WL 4420220, at *4; Murphy v. Aaron's, Inc., Civil Action No. 19-cv-00601-CMA-KLM, 2020 WL 2079188, at *8, 15 & n.9 (D. Colo. Apr. 30, 2020) (collecting cases); Sanchez v. Launch Tech. Workforce Sols., LLC, 297 F. Supp. 3d 1360, 1365 (N.D. Ga. 2018).  "Under this view, there is no constitutional unfairness in subjecting a defendant to the class claims of out-of-state plaintiffs in Rule 23 class actions, as long as a court has jurisdiction over the class

representative's claims."  Simon v. Ultimate Fitness Grp., LLC, No. 19 Civ. 890 (CM), 2019 WL 4382204, at *4 (S.D.N.Y. Aug. 19, 2019).

Some courts have concluded the opposite, finding that the due process concerns in Bristol-Myers apply to defendants in a federal class action.  See, e.g., Stacker, 2021 WL 2646444, at *8 (concluding that "the due process concerns recognized in Bristol-Myers and other Supreme Court precedent . . . foreclose a nationwide class action that is not limited to a nonresident defendant's conduct in the forum state"); Carpenter, 441 F. Supp. 3d at 1035 (predicting that the Supreme Court will ultimately "hold that a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims").

Finally, some courts have found that moving to dismiss unnamed class members for lack of personal jurisdiction is premature prior to class certification.  See Molock v. Whole Foods Mkt. Grp., Inc., 952 F.3d 293, 298 (D.C. Cir. 2020) (holding that "[p]utative class members become parties to an action—and thus subject to dismissal—only after class certification[,]" and therefore "[a]ny decision purporting to dismiss putative class members before that point would be purely advisory"); see also Moser v. Benefytt, Inc., 8 F.4th 872, 877 (9th Cir. 2021) (holding that a Rule 12(b) personal jurisdiction defense as to putative, unnamed, non-resident class members is not available until the class is certified); Cruson v. Jackson Nat'l Life Ins. Co., 954 F.3d 240, 250-51 (5th Cir. 2020) (same).

The Court finds thoughtful reasoning in all these approaches.  However, the Court is persuaded by, and hereby adopts, the reasoning of the Sixth and Seventh Circuits in Lyngaas, 992 F.3d at 434-38, and Mussat, 953 F.3d at 445-48, respectively.  See also Murphy, 2020 WL 2079188, at *8-17 (containing a lengthy discussion of why the Supreme Court's holding in Bristol-Myers

does not apply to federal class action lawsuits against a nonresident defendant); Sanchez, 297 F.

Supp. 3d at 1363-69 (same).  Briefly, contrary to Defendant's argument, the difference between

the mass tort action in Bristol-Myers and a federal class action "is a very material distinction."

Lyngaas, 992 F.3d at 437.  Specifically:

> The mass action in Bristol-Myers involved consolidation of eight separate actions, brought on behalf of 86 California plaintiffs and 592 plaintiffs from 33 other states, that were filed in various state courts. Id. at 1776–78. These actions were consolidated in accordance with Section 404 of the California Rule of Civil Procedure Code, which permitted **individual** plaintiffs to consolidate their **individual** cases when certain Section 404 prerequisites (i.e., the actions that are pending in different courts shared a common question of fact or law) were met prior to the handling of **individual** issues. Mussat, 953 F.3d at 446 (quoting Cal. Civ. Proc. Code § 404). Importantly, each Bristol-Myers plaintiff was a real party in interest where the plaintiff was named and required to effect service. 137 S. Ct. at 1776–78; see also Mussat, 953 F.3d at 447; Sanchez, 297 F. Supp. 3d at 1365–66. Thus, the Supreme Court determined that "[w]hat [was] needed---and what [was] missing [for the California state court to exercise personal jurisdiction over the defendant as to non-California plaintiffs' claims], [was] a connection between the forum and the specific claims at issue" by the non-California plaintiffs. Bristol-Myers, 137 S. Ct[.] at 1781.

Murphy, 2020 WL 2079188, at *16.

> In a class action, by contrast, "the lead plaintiffs earn the right to represent the interests of absent class members by satisfying all four criteria of Rule 23(a) and one branch of Rule 23(b)." Mussat, 953 F.3d at 447. The defendant "is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense." Sanchez, 297 F. Supp. 3d at 1366. In this sense, the only "suit" before the court is the one brought by the named plaintiff. Thus, when the court considers whether the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum," Bristol-Myers, 137 S. Ct. at 1780 (alterations and citation omitted), the court need analyze only the claims raised by the named plaintiff, who in turn represents the absent class members, see Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'") (quoting Califano v. Yamasaki, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).

Lyngaas, 992 F.3d at 435. Because of the "unitary" nature of the class claim, the Court "perceives

no unfairness in haling the defendant into court to answer to it in a forum that has specific

jurisdiction over the defendant based on the representative's claim."  Sanchez, 297 F. Supp. 3d at 1366.

   In sum, when determining whether a court may exercise specific personal jurisdiction over a defendant, the court is tasked with analyzing "the 'relationship among the defendant, the forum, and the litigation,' Daimler AG v. Bauman, 571 U.S. 117, 132–33, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), and that relationship does not depend on the makeup of the unnamed class members." Lyngaas, 992 F.3d at 437.  "[T]he named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." Mussat, 953 F.3d at 447.

   Here, Plaintiff asserts, and Defendant does not dispute, that the Court may exercise specific jurisdiction over Defendant as to Plaintiff's claims because "Defendant has 'sufficient New Mexico contacts and Plaintiff's claims arise from those contacts[.]"  ECF No. 25 at 9-10 (quoting Romero v. TitleMax of N.M., Inc., No. CV 17-775 KG/SCY, 2020 U.S. Dist. LEXIS 140648, at *16 (D.N.M. Aug. 6, 2020)).  That is all that is needed for this case to proceed as a nationwide class action.  Lyngaas, 992 F.3d at 437; Mussat, 953 F.3d at 447.  Accordingly, Defendant's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction is denied.

   **c.  Failure to state a claim**

   Finally, Defendant argues that the Amended Complaint fails to state a claim upon which relief can be granted.  ECF No. 20 at 14-23.  As previously stated, Plaintiff has abandoned Counts II and III of the Amended Complaint.  See ECF No. 25 at 3 n.2.  The Court will address the remaining claims sequentially.

### 1.  Count I: New Mexico's Unfair Practices Act

Count I alleges a violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.[1]  ECF No. 17 ¶¶ 108-18.  Specifically, it alleges that

> Defendant engaged in unfair, deceptive, or unconscionable trade practices in the conduct of trade or commerce in violation of the UPA, including but not limited to:
>
> a. representing through advertisements and product packaging that the Class Devices were of a particular standard or quality that it knew or should have known were of another;
>
> b. representing through advertisements and product packaging that the Class Devices have characteristics, uses, and benefits that they do not have;
>
> c. using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact—such as the existence of the Display Defect—in a manner that deceives or tends to deceive purchasers of Class Devices, and while knowing that consumers would rely on the advertisements and Defendant's uniform representations concerning the Class Devices' display quality and functionality in purchasing their Class Devices;
>
> d. taking advantage of the lack of knowledge, ability, experience or capacity of purchasers of Class Devices to evaluate the quality of the Class Devices to a grossly unfair degree; and
>
> e. selling defective Class Devices, resulting in a gross disparity between the value received by purchasers and the price paid.

Id. ¶ 111.

Defendant argues that Plaintiff's UPA claim fails "because it is premised on nonactionable puffery—'those vague generalities that no reasonable person would rely on as assertions of particular facts.'"  ECF No. 20 at 15 (quoting Alpine Bank v. Hubbell, 555 F.3d 1097, 1106 (10th Cir. 2009)).  It argues that courts have found representations that an item is "versatile and reliable,"

---

[1]    Plaintiff asserts Count I individually and on behalf of the New Mexico subclass only.  He asserts the remaining counts individually and on behalf of the nationwide class and New Mexico subclass.

"dependable," "clear and remarkably vivid," of the "highest quality," and "perfect for" a particular use to be non-actionable puffery.  Id. at 16-17 (citations omitted).

Plaintiff argues that "Defendant's factual statements regarding material characteristics of the Tablets are sufficient to sustain [Count I] and, moreover, Plaintiff's UPA claim succeeds based on Defendant's failure to disclose the Defect and unconscionable trade practices in selling the defective Tablets."  ECF No. 25 at 12.  He argues that "[t]he UPA imposes an affirmative duty to disclose material facts[,]" id. (citation omitted), and Defendant did not address Plaintiff's allegation that Defendant failed to disclose a material fact regarding the tablet, id. (referencing ECF No. 17 ¶ 111(c)).  He further argues that Defendant failed to address the allegation that "Defendant's statements constitute 'exaggeration, innuendo or ambiguity' tending to deceive Plaintiff and consumers as to material aspects of the Tablets in violation of N.M. Stat. Ann. § 57-12-2(D)(14)."  Id. at 13 (referencing ECF No. 17 ¶ 111(c)).  In this regard, he argues that Defendant's representations that the tablet is "perfect for kids," "dependable," "versatile," suitable for mobile use, and has a "crystal-clear" display offering "stunning clarity," id. (citing ECF No. 17 ¶¶ 23, 43, 46, 48), "exaggerate the quality of the displays and create ambiguity as to their suitability for more demanding uses when, on the contrary, the Defect causes the displays to be extremely fragile and susceptible to catastrophic failure during normal use and results in cracking, blotching, and scratching that obscures the display[,]" id. (citing ECF No. 17 ¶ 69).  He argues that Defendant's statements are actionable under New Mexico's UPA.  Id. (citing Fuel Depot, LLC v. Travelers Cas. Ins. Co. of Am., No. 2:20-cv-01257-DHU-JHR, 2023 U.S. Dist. LEXIS 61294, at *22 (D.N.M. Apr. 6, 2023); Puma v. Wal-Mart Stores E., LP, 523 P.3d 589, 598 (N.M. Ct. App. 2022)).  Plaintiff further argues that Defendant failed to address Plaintiff's allegation that Defendant's misleading marketing of the Tablets was an unconscionable trade practice under N.M.

25

Stat. Ann. § 57-12-2(E)." <u>Id.</u> at 14.  In this regard, he argues that he "has adequately pleaded that Defendant took advantage of consumers by, <u>inter alia</u>, selling defective tablets to unsuspecting customers who could not discover the Defect prior to purchasing the Tablets," <u>id.</u> (citing ECF No. 17 ¶¶ 7, 180), "and that the Tablets were worth less than those consumers believed they were purchasing," <u>id.</u> (citing ECF No. 17 ¶ 116).  He argues that these allegations "are sufficient to support a claim of unconscionability."  <u>Id.</u> (citing <u>Ashton Woods Holdings LLC v. USG Corp. (In re Domestic Drywall Antitrust Litig.)</u>, No. MDL No. 13-2437, 2016 U.S. Dist. LEXIS 90619, at *25 (E.D. Pa. July 13, 2016)).  Finally, Plaintiff argues that Defendant's marketing statements that the tablets possess a "crystal-clear" display offering "stunning clarity" are statements of fact, not puffery.  <u>Id.</u> at 14-16.

In its Reply, Defendant argues that Plaintiff does not dispute that puffery is not actionable under the UPA and that most of the marketing statements "that undergird his UPA claim are clear-cut puffery."  ECF No. 26 at 5.  It argues that the statement that the tablets possess a "crystal-clear" display offering "stunning clarity" are not specific, measurable claims, and therefore they are non-actionable puffery.  <u>Id.</u> (citing <u>Am. Italian Pasta. Co. v. New World Pasta Co.</u>, 371 F.3d 387, 391 (8th Cir. 2004); <u>United Indus. Corp. v. Clorox Co.</u>, 140 F.3d 1175, 1180 (8th Cir. 1998); <u>Ahern v. Apple Inc.</u>, 411 F. Supp. 3d 541, 556 (N.D. Cal. 2019); <u>Consumer Advocates v. Echostar Satellite Corp.</u>, 8 Cal. Rptr. 3d 22, 29-30 (Cal. Ct. App. 2003)).  Defendant further argues that the UPA "does not impose a free-wheeling duty to disclose; rather, it requires disclosure only to the extent 'reasonably necessary to prevent any statements from being misleading[,]'" <u>id.</u> at 6 (quoting <u>Smoot v. Physicians Life Ins. Co.</u>, 87 P.3d 545, 549 (N.M. Ct. App. 2003)), and puffery cannot be deemed false or misleading, <u>id.</u> (citing ECF No. 20 at 15-16).  Similarly, Defendant argues that Plaintiff's arguments regarding "exaggeration, innuendo or ambiguity" and an alleged "unconscionable trade

practice" fail because "any UPA claim hinges on a 'false or misleading' statement[,]" id. at 7 (citing

Maese v. Garrett, 329 P.3d 713, 719 (N.M. Ct. App. 2014)), and Plaintiff is unable to assert this

"essential element," id. (citing Maese, 329 P.3d at 719).  Defendant further argues that even if

Plaintiff could proceed without a false or misleading statement, the Amended Complaint fails to

allege facts "plausibly showing that Walmart took advantage of Plaintiff to a 'grossly unfair

degree'; he alleges only a product defect and an ordinary retail transaction."  Id.  It further argues

that Plaintiff has not alleged any facts "plausibly showing a 'gross disparity' between the price and

the value; he alleges only that the screen on his $64 tablet was not as good of quality as he thinks

it should be."  Id.

New Mexico's UPA declares that "[u]nfair or deceptive trade practices and unconscionable

trade practices in the conduct of any trade or commerce are unlawful."  N.M. Stat. Ann. § 57-12-

3.  The UPA defines "unfair or deceptive trade practice," in part, as

> a false or misleading oral or written statement, visual description or other
> representation of any kind knowingly made in connection with the sale . . . of goods
> or services . . . by a person in the regular course of the person's trade or commerce,
> that may, tends to or does deceive or mislead any person and includes . . . using
> exaggeration, innuendo or ambiguity as to a material fact or failing to state a
> material fact if doing so deceives or tends to deceive[.]

N.M. Stat. Ann. § 57-12-2(D)(14).  "The gravamen of an unfair trade practice is a misleading,

false, or deceptive statement made knowingly in connection with the sale of goods or services."

Lohman v. Daimler-Chrysler Corp., 166 P.3d 1091, 1093 (N.M. Ct. App. 2007).  The UPA defines

"unconscionable trade practice" as

> an act or practice in connection with the sale, lease, rental or loan, or in connection
> with the offering for sale, lease, rental or loan, of any goods or services, including
> services provided by licensed professionals, or in the extension of credit or in the
> collection of debts that to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid.

N.M. Stat. Ann. § 57-12-2(E).

> In order to state a claim under the UPA, a complaint must contain allegations to the effect that: (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

Lohman, 166 P.3d at 1093.

For the reasons that follow, the Court finds that Count I fails to satisfy the first element of an UPA claim because the allegedly false or misleading representations constitute puffery, and puffery is not actionable as a false or misleading statement.

"New Mexico courts have said little regarding the nature of . . . puffery in the context of the UPA." Begay v. Medicus Healthcare Sols., LLC, Civ. No. 15-500 JCH/SCY, 2015 WL 13650107, at *5 (D.N.M. Nov. 18, 2015). However, in interpreting the "unfair or deceptive and unconscionable trade practices" provision of the UPA, "courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts." N.M. Stat. Ann. § 57-12-4.

The Tenth Circuit has explained that "the term 'puffery' is used to 'characterize those vague generalities that no reasonable person would rely on as assertions of particular facts.'" Renfro v. Champion Petfoods USA, Inc, 25 F.4th 1293, 1302 (10th Cir. 2022) (quoting Alpine Bank, 555 F.3d at 1106). "These kinds of statements cannot form the basis for any claim of misrepresentation of fact." Id. "[G]eneral statements of opinion typically constitute protected puffery, while specific

28

representations of fact can form the basis of a deceptive trade practice claim." Id. (quotation marks and citation omitted).  The Third Circuit defines puffery as "an exaggeration or overstatement expressed in broad, vague, and commendatory language." Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993). See also Begay, 2015 WL 13650107, at *5.  Similarly, the Eighth Circuit has stated that "[p]uffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." Am. Italian Pasta, 371 F.3d at 390-91. See also Begay, 2015 WL 13650107, at *5. "To be actionable, the statement must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" Am. Italian Pasta, 371 F.3d at 391 (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999)).

The Court finds that Defendant's representations that the Surf Tablet Pro is "perfect for kids" is a general statement of opinion and therefore is non-actionable puffery. See, e.g., Baney Corp. v. Agilysys NV, LLC, 773 F. Supp. 2d 593, 609 (D. Md. 2011) (finding that the defendant's statement that a computer program is "perfect for a multi-property environment" was nonactionable puffery); Omega Eng'g, Inc. v. Eastman Kodak Co., 30 F. Supp. 2d 226, 248 (D. Conn. 1998) (finding that "statements that a product is 'perfect' for a particular application amount to puffery" because, inter alia, "a claim of 'perfection' should be viewed skeptically as it is usually an abstract statement that a particular product meets an ideal standard . . . .").

The Court further finds that Defendant's representations that the Surf Tablet Pro is "dependable" is a vague generality and therefore is non-actionable puffery. See, e.g., Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 608 (D.N.J. 2016) (finding that defendant's statement that its products are, inter alia, "top-quality" and "dependable" to be non-actionable puffery

because they are "neither measurable nor concrete, and are simply too imprecise to be considered material"); Tatum v. Chrysler Grp. LLC, No. 10–4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (finding that advertising claims that defendant's vehicle is "reliable" and "durable" "amounted to nothing more than non-actionable hyperbole or puffery"); Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1136 (N.D. Cal. 2010) (finding that the defendant's representation that a washing machine was "designed and manufactured for years of dependable operation" was nonactionable puffery).

The Court further finds that Defendant's representations that the Surf Tablet Pro is "versatile" is a vague generality and therefore is non-actionable puffery.  See Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012) (finding the defendant's representation that computers have a "versatile, reliable system" to be nonactionable puffery).

The Court further finds that the assertion on the packaging of the Surf Tablet Pro that "mobile computing has never been easier" is a statement of opinion, a vague generality, and a statement of bluster or boast that no reasonable person would rely on as an assertion of fact. Therefore, it is non-actionable puffery.  See Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc., 412 F. Supp. 3d 353, 365-66 (S.D.N.Y. 2019) (finding that CEO's statement in a press release that he has "never been more confident and excited about the future of" the company was non-actionable puffery in securities fraud case); Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 643-44 (S.D.N.Y. 2011) (finding that the defendant's representation that its high-speed internet service provides the "fastest, easiest way to get online" was non-actionable puffery).

The Court further finds that Defendant's representations that the Surf Tablet Pro has a "crystal-clear display" which provides "stunning clarity" are vague generalities and exaggerated statements of bluster or boast upon which no reasonable consumer would rely.  Therefore, they are

non-actionable puffery.  Ahern, 411 F. Supp. 3d at 556 (finding that the defendant's statements about "clear and remarkably vivid" computer screens were non-actionable puffery because they "are not factual representations that a given standard is met" and "do not say anything about specific characteristics or components—or even how clear or vivid the screens actually are"); Consumer Advocates, 8 Cal. Rptr. 3d at 29-30 (finding that representations that a satellite television service provided "crystal clear digital" video and "CD quality" audio were non-actionable puffery because they are "not factual representations that a given standard is met" but rather "boasts, all-but-meaningless superlatives").

Because the Court finds that the challenged representations constitute mere puffery, Count I must be dismissed.  Begay, 2015 WL 13650107, at *6 (dismissing New Mexico UPA claim to the extent it was based upon statements that constitute puffery because they "consist of exaggerations or boasts on which no reasonable consumer would rely[,]" "[p]hrases like, 'laser-focused on quality,' and 'quality solutions,' are not measurable standards and are so broad that one would not reasonably rely upon them[,]" and "asserting that 'accountability is key' is a vague boast, not a promise as to the specific quality of a product or service").

### 2.   Count IV: Breach of Express Warranty

In Count IV, Plaintiff alleges a claim for breach of express warranty.  ECF No. 17 ¶¶ 143-62.  Specifically, he alleges that Defendant "warranted the Class Devices against defects, including the Display Defect[,]" id. ¶ 149, and breached the express warranty "by supplying the Class Devices to Plaintiff and Class members with the Display Defect[,]" id. ¶ 153.  Count IV further alleges that Defendant breached the express warranty by "failing to repair the Class Devices and by failing to provide to Plaintiff or Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Class Devices to

Plaintiff and Class members." Id. ¶ 154.  It argues that "any attempt by Walmart to limit or disclaim the express warranties in a manner that would exclude coverage of the Display Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Walmart's concealment of material facts[,]" rendering any disclaimer as to liability for a display defect "null and void." Id. ¶ 160.

Defendant argues that Count IV fails to state a claim because it is premised entirely on the existence of an alleged display defect, and the Amended Complaint "affirmatively alleges that the tablets' express warranty 'explicitly excludes display damage.'" ECF No. 20 at 20 (citing ECF No. 17 ¶ 87).

Plaintiff argues that it is irrelevant that display damage is excluded from the express warranty because the Amended Complaint alleges that the exclusion of display damage from warranty coverage while knowing of the Defect and concealing the Defect renders the warranty substantively unconscionable. ECF No. 25 at 19 (citing ECF No. 17 ¶¶ 69, 71, 76, 83 160, and Meyers v. Garmin Int'l, Inc., No. 13-CV-2416-CM-GLR, 2014 U.S. Dist. LEXIS 8616, at *18 (D. Kan. Jan. 23, 2014)).  Plaintiff further argues that the warranty is procedurally unconscionable "because of the unequal bargaining power between Defendant and Plaintiff given Defendant's knowledge of the Defect, [ECF No. 17] ¶ 87, and because Plaintiff lacked options for negotiating the warranty terms, [ECF No. 17] ¶ 94." Id. (citing Klug v. Watts Regulator Co., No. 8:15CV61, 2015 U.S. Dist. LEXIS 199375 (D. Neb. Dec. 29, 2015)).  Plaintiff further notes that "Defendant's motion lacks any discussion concerning the U.C.C. section authorizing the Court to allow discovery on the unconscionability issue." Id. at 20 (citing Payne v. Fujifilm U.S.A., Inc., Civil Action No. 07–385(JAG), 2007 WL 4591281, at *4 (D.N.J. Dec. 28, 2007)).

In its Reply, Defendant argues that Plaintiff's failure to cite any New Mexico case law "allowing courts to unilaterally expand a warranty's coverage based on alleged unconscionability" is "not surprising" because in New Mexico "unconscionability is 'an affirmative <u>defense</u> to contract <u>enforcement</u>." ECF No. 26 at 9 (quoting <u>Santa Fe Cmty. Coll. v. Ztark Broadband, LLC</u>, 643 F. Supp. 3d 1259, 1275 (D.N.M. 2022)). Defendant argues that unconscionability "does not authorize a court to 'rewrite a contract.'" <u>Id.</u> (quoting <u>Patterson v. Nine Energy Serv., LLC</u>, 330 F. Supp. 3d 1280, 1313 (D.N.M. 2018)). Defendant further argues that, regardless, the display-damage exclusion is not unconscionable" because Plaintiff had a choice among many tablets. <u>Id.</u> (citing <u>Kennedy v. Samsung Elecs. N. Am., Inc.</u>, No. 14–cv–4987, 2015 WL 2093938, at *7 (D.N.J. May 5, 2015)). It argues that "[a] contrary holding would eviscerate every warranty exclusion in the State—which would run counter to the Legislature's express decision to allow exclusions in warranties." <u>Id.</u> at 9-10 (citing N.M. Stat. Ann. § 55-2-316).

Under New Mexico law, a seller expressly warrants goods in a commercial transaction when it (i) makes an affirmation of fact or promise to the buyer "which relates to the goods and becomes part of the basis of the bargain"; (ii) describes the goods in a way that "is made part of the basis of the bargain"; or (iii) provides a "sample or model which is made part of the basis of the bargain." N.M. Stat. Ann. § 55-2-313. "If the goods provided are not as warranted, the goods are in breach of warranty." <u>Badilla v. Wal-Mart Stores E. Inc.</u>, 357 P.3d 936, 941 (N.M. 2015). "A breach of warranty presents an objective claim that the goods do not conform to a promise, affirmation, or description, or that they are not merchantable." <u>Id.</u> (quotation marks and citation omitted). "A breach of warranty occurs when tender of delivery is made . . . ." <u>Id.</u> (citing N.M. Stat. Ann. § 55-2-725(2)).

"Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." Cordova v. World Fin. Corp. of NM, 208 P.3d 901, 907 (N.M. 2009). "The doctrine of contractual unconscionability can be analyzed from both procedural and substantive perspectives." Id. "Substantive unconscionability concerns the legality and fairness of the contract terms themselves" and "focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." Id. "Procedural unconscionability . . . examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." Id. at 907-08.

Under New Mexico's version of the Uniform Commercial Code ("UCC"), "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." N.M. Stat. Ann. § 55-2-302(1). See also New Mexico ex rel. King v. B & B Inv. Grp., Inc., 329 P.3d 658, 675 (N.M. 2014) ("When a contract term is unconscionable . . . the court 'may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.'"). "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." N.M. Stat. Ann. § 55-2-302(2). When

considering allegations of a warranty's unconscionability on a motion to dismiss, "courts consider whether the plaintiff has alleged sufficient facts as to unconscionability." Cleveland v. Whirlpool Corp., 550 F. Supp. 3d 660, 669 (D. Minn. 2021). See also Naparala v. Pella Corp., 106 F. Supp. 3d 715, 725 (D.S.C. 2015).

Here, the Amended Complaint alleges that the Class Devices are subject to a one-year Limited Warranty pursuant to which "Defendant warrants against defects in the Class Devices and promises to replace or repair a defective part at no charge or, if the unit is unrepairable, replace the unit." ECF No. 17 ¶ 91. However, Defendant "explicitly excludes display damage from the warranty." Id. ¶ 87. The Amended Complaint alleges that the Limited Warranty's exclusion for display defects "is unconscionable and unenforceable here" because "Defendant knowingly sold a defective product without informing consumers of the existence of the Display Defect." Id. ¶ 94. It further alleges that "[a] gross disparity in bargaining power existed between Defendants and other Class members, and Defendants knew of the Display Defect at the time of sale." Id. It alleges that "Walmart expressly warranted the Class Devices against defects," id. ¶ 149, and "Walmart breached its express warranties by supplying the Class Devices to Plaintiff and Class members with the Display Defect[,]" id. ¶ 153.

The Court finds that Count IV plausibly alleges that the Limited Warranty's exclusion of display defects was substantively unconscionable because "[a] limitation on warranty for a product the manufacturer allegedly knows is defective is potentially so 'one-sided' as to give rise to substantive unconscionability—at least at the pleading stage." Naparala, 106 F. Supp. 3d at 724 (citing Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc., No. 10–23869–CIV, 2012 WL 1570057, at *10 (S.D. Fla. May 2, 2012) ("[I]f a product contains a known latent defect then any warranty limits may be unconscionable.")). The Court further finds that the Amended Complaint plausibly

alleges that the Limited Warranty was procedurally unconscionable in that a gross disparity in bargaining power existed between Defendants and other purchasers of the Class Devices, and Defendants knew of the Display Defect at the time of sale.  See In re Samsung DLP Television Class Action Litig., Civ. 07–2141(GEB), 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009) (finding that the complaint plausibly alleged that a limited warranty was both procedurally and substantively unconscionable where it alleged that the defendant knowingly sold consumers a defective product, concealed the defect from consumers, and the defect did not manifest until after the warranty period).    Therefore, the Amended Complaint plausibly alleges that Defendant breached the warranty by selling Plaintiff the device with the Display Defect.  See Naparala, 106 F. Supp. 3d at 724-25 (finding that the complaint plausibly alleged a claim for breach of express warranty where it alleged that the defendant sold the plaintiff windows it knew were defective and tried to limit the warranty in a manner that would exclude coverage for the defect, rendering the limited warranty unconscionable).   See also Cleveland, 550 F. Supp. 3d at 669 (finding that the complaint plausibly alleged a claim for breach of express warranty where it alleged that the at-issue dishwashers contained a defect, that the defendant knew about the defect and concealed the defect from consumers, and tried to limit the express warranty in a manner that would exclude coverage of the defect, rendering the limited warranty unconscionable); In re Samsung DLP Television Class Action Litig., 2009 WL 3584352, at *5 (finding that the plaintiffs adequately alleged a claim for breach of express warranty where it alleged that the at-issue television contained a defect that did not manifest until after the one-year warranty period, the defendant knew about the defect and concealed the defect from consumers, and tried to limit the express warranty in a manner that would exclude coverage of the defect, rendering the limited warranty procedurally and substantively unconscionable because consumers had no meaningful choice in

time limitations of warranty, and there was a significant disparity in bargaining power); Payne v. Fujifilm U.S.A., Inc., Civ. 07–385(JAG), 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007) (finding that the complaint plausibly alleged a claim for breach of express warranty where it alleged that the at-issue camera contained a defect that did not manifest until after the one-year warranty period, the defendant knew about the defect and concealed the defect from consumers, rendering the limited warranty unconscionable).

The Amended Complaint also alleges that "[t]he time limits contained in Defendants' warranty periods were . . . unconscionable and inadequate to protect Plaintiff and other Class members" because they "had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants." ECF No. 17 ¶ 94.

However, the Court finds that the Amended Complaint fails to plausibly allege that the Limited Warranty's time limitations are unconscionable. The Amended Complaint alleges that "[i]n some tablets the Display Defect manifests within the first days of use; in other cases the Display Defect may become apparent only after months of use." Id. ¶ 64. It further alleges that Plaintiff's first device became unusable approximately four months after purchase, and that his second device became unusable within days of purchase. Id. ¶ 25. As such, the Court cannot find that the Class Devices' one-year warranty period is unconscionable under the Amended Complaint's allegations. See In re Samsung DLP Television Class Action Litig., 2009 WL 3584352, at *5 (finding limited warranty unconscionable because the defendant allegedly knew the television contained a defect and the defect did not manifest until after the one-year limitations period); Payne, 2007 WL 4591281, at *5 (same).

Regardless, the Court denies Defendant's Motion to Dismiss Count IV. Cleveland, 550 F. Supp. 3d at 669; Naparala, 106 F. Supp. 3d at 725.

### 3. Count V: Breach of Implied Warranty of Merchantability

In Count V, Plaintiff alleges that Defendant breached the implied warranty of merchantability "because the Class Devices were not of a merchantable quality due to the Display Defect." ECF No. 17 ¶ 168.

Defendant argues that Count V fails to state a claim because Plaintiff "has not plausibly alleged that the tablets he purchased were not merchantable at the time of sale." ECF No. 20 at 21. It argues that "'there is no requirement goods must last forever in order to [be] merchantable.'" id. (quoting Adams v. Nissan N. Am., Inc., 395 F. Supp. 3d 838, 852 (S.D. Tex. 2018)). It argues that "'[t]he implied warranty of merchantability provides only a minimum level of quality and is not an assurance that the buyer's expectations will be fulfilled.'" Id. (quoting 3 David Frisch, Anderson on the Uniform Commercial Code § 2–314:71). Defendant argues that the implied warranty of merchantability requires only that the tablets Plaintiff purchased "be of sufficient quality as one would expect for a $64 tablet." Id. In this regard, Defendant notes that the Amended Complaint alleges that the first tablet Plaintiff purchased began having display issues "approximately four months" after purchase, "and only became unusable at some unspecified time after that." Id. (quoting ECF No. 17 ¶ 25). As to the second tablet, the Amended Complaint does not specify when the crack appeared or how long thereafter "the touchscreen stopped responding." Id. (quoting ECF No. 17 ¶ 25). Defendant suggests that it happened more than thirty days after purchase because if it had occurred within the thirty-day return period, "Plaintiff presumably would have returned his tablet." Id.

Plaintiff argues that he has plausibly alleged a breach of the implied warranty of merchantability because the Amended Complaint "clearly alleges that his Tablets were not

merchantable because the Defect caused them to fail within months or days after purchase." ECF No. 25 at 20 (citing ECF No. 17 ¶ 25).

In its Reply, Defendant notes that the Amended Complaint alleges that Plaintiff "'used and maintained his [tablets] in a manner typical of a reasonable consumer,' Am. Compl. ¶ 27—which, in his view, involves 'allowing [tablets] to make a short drop to a surface[.]'" ECF No. 26 at 10 (quoting ECF No. 17 ¶¶ 3, 52). Defendant argues, however, that Plaintiff has not alleged or argued "that a reasonable consumer would expect a $64 tablet to survive 'a short drop to a surface.'" Id. (quoting ECF No. 17 ¶ 52). And for that reason, Defendant argues that Count V should be dismissed.

"To establish a claim for breach of the implied warranty of merchantability, a plaintiff must prove that the seller sold goods or products that failed to meet the statutory definition of 'merchantable.'" Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc., 184 F. Supp. 3d 1030, 1059 (D.N.M. 2016). As relevant here, goods are merchantable under New Mexico's version of the UCC if they "are fit for the ordinary purposes for which such goods are used[.]" N.M Stat. Ann. § 55-2-314(2)(c). "A breach of the implied warranty of merchantability claim 'thus requires proof of a defect[,]'" Am. Mech. Sols., L.L.C., 184 F. Supp. 3d at 1060, although "to establish a breach of the implied warranty, a buyer is not required to prove a specific defect in the goods[,]" Salazar v. D.W.B.H., Inc., 192 P.3d 1205, 1211 (N.M. 2008). "Rather, a buyer can use circumstantial evidence to show that the goods were not fit for the ordinary purpose for which they were intended." Id.

Here, the Court finds that the Amended Complaint plausibly alleges a design defect rendering the Class Devices unfit for the ordinary purposes for which they are used. Specifically, it alleges that Plaintiff and other purchasers of the Class Devices "have found that their displays

unexpectedly cracked or malfunctioned as the result of ordinary use of a Class Device, or as the result of ordinary stress upon their Class Device (such as allowing it to make a short drop to a surface)."  ECF No. 17 ¶ 52.  "Damage arising from the Display Defect happens without warning and most often renders the tablets unusable."  Id.  "Because the Class Device touchscreens are extremely susceptible to physical damage arising from ordinary use, a large percentage of Class Devices experience screen blotching, touch failure, or dead screens."  Id. ¶ 62.  The Display Defect rendered Plaintiff's first device unusable approximately four months after purchase, and rendered his second device "completely unusable" "[w]ithin days" of purchase.  Id. ¶ 25.  The Amended Complaint contains several reviews of the Class Devices from Defendant's website showing that other purchasers experienced virtually identical issues with their tablets' screens within days or weeks of purchase and after normal use.  Id. ¶ 81.  The Court finds this sufficient to allege a claim for breach of the implied warranty of merchantability and therefore denies Defendant's Motion to Dismiss Count V of the Amended Complaint.  See Morcom v. LG Elecs. USA, Inc., Civil Action No.: 16-cv-4833, 2017 U.S. Dist. LEXIS 198935, at *20 (D.N.J. Nov. 30, 2017) (denying motion to dismiss breach of implied warranty of merchantability claim where the complaint alleged that the plaintiff experienced defects "within days of beginning to use his washing machine").

### 4.   Count VI: Fraudulent Concealment

Although Plaintiff titles Count VI "Fraudulent Concealment," it appears that "fraudulent concealment" is not a stand-alone claim under New Mexico law, but rather is an equitable doctrine courts apply to toll a statute of limitations under certain circumstances.  See Tomlinson v. George, 116 P.3d 105, 111-12 (N.M. 2005); Kern ex rel. Kern v. St. Joseph's Hosp., Inc., 697 P.2d 135, 142-43 (N.M. 1985).  Thus, the Court construes Count VI as a claim for common law fraud.

Defendant argues that Count VI fails to state a claim because "Plaintiff does not allege that Walmart knew that he was 'acting under a mistaken belief' at the time he purchased the tablets." ECF No. 20 at 18.  It further argues that the Amended Complaint demonstrates that Defendant had no "superior knowledge" that could not have been discovered by the exercise of reasonable diligence because the Amended Complaint alleges that consumers began posting reviews on Defendant's website complaining about the Display Defect "'[s]oon after Walmart began selling the' tablets." Id. at 18-19 (quoting ECF No. 17 ¶ 80).

Plaintiff argues that he has plausibly alleged a fraudulent concealment claim because Defendant had superior knowledge of the Display Defect that Plaintiff could not have discovered by the exercise of reasonable diligence.  ECF No. 25 at 16.  He argues Defendant had a duty to disclose the defect because of this superior knowledge, because the defect poses a safety risk, and because "when a party speaks on a matter relevant to the defect [] 'there is a duty . . . to give reliable information[.]'" Id. (quoting Archuleta v. Kopp, 562 P.2d 834, 837 (N.M. Ct. App. 1977)). Plaintiff further argues that "he had no obligation to scour Defendant's website for negative reviews before his in-store purchases." Id. at 17 (citing Falk v. Gen. Motors. Corp., 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007)).  He further argues that even if he had read negative reviews prior to his purchases, "the mere existence of one or two negative reviews is not sufficient to reveal the scope and nature of the Defect, i.e., that **all** Tablets suffered from the Defect." Id.  Plaintiff argues that this is a factual issue not suitable for resolution at the motion to dismiss stage. Id. (citing "O" Co. v. Osteotech, Inc., No. CIV 98-981 M/KBM, 2002 U.S. Dist. LEXIS 30483, at *10 (D.N.M. Oct. 22, 2002)).

In its Reply, Defendant maintains that Count VI fails to state a claim because Defendant's "superior knowledge" was within Plaintiff's reach or could have been discovered by the exercise

of reasonable diligence because the Amended Complaint alleges that "'[s]oon after Walmart began selling the Class Devices, customers began posting complaints about their displays to Walmart's website' such that '[i]t rapidly became obvious that the Display Defect is a serious problem for the Class Devices.'"  ECF No. 26 at 7-8 (quoting ECF No. 17 ¶ 80).  Defendant appears to argue that if negative reviews of a product are posted on the internet, the defendant's "superior knowledge" is "'within the reach of the other party' or could 'have been discovered by the exercise of reasonable diligence.'"  Id. at 8 (quoting Krupiak v. Payton, 561 P.2d 1345, 1346 (N.M. 1977)).  It further argues that unless a fiduciary duty exists, there is no duty to disclose.  Id. (citing Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 858 P.2d 66, 77 (N.M. 1993); R.A. Peck, Inc. v. Liberty Fed. Sav. Bank, 766 P.2d 928, 933 (N.M. Ct. App. 1988)).

"Actionable fraud is found if a party to a transaction knows of material facts, has a duty to disclose, and remains silent."  Krupiak, 561 P.2d at 1346.  "A duty to disclose may arise if there is knowledge that the other party to a contemplated transaction is acting under a mistaken belief." Id.  "A duty to disclose may also arise if one has superior knowledge that is not within the reach of the other party or could not have been discovered by the exercise of reasonable diligence."  Id. "Generally, the existence of a duty is 'a question of law for the trial court to decide.'"  Azar v. Prudential Ins. Co. of Am., 68 P.3d 909, 923 (N.M. Ct. App. 2003).

Here, the Court finds that Count VI plausibly alleges fraud with the requisite particularity. The Amended Complaint contains very thorough and specific allegations regarding the Display Defect.  ECF No. 17 ¶¶ 52-68.  It also alleges that "[t]he Display Defect is latent and lies in the internal components of the Class Devices."  Id. ¶ 179.  It further alleges that Defendant "knew that Plaintiff and Class members would not be able to inspect or otherwise detect the Display Defect prior to purchasing the Class Devices."  Id.  It further alleges that Defendant knew of the Display

Defect "no later than late 2019" through "customer feedback—in the form of warranty claims, return attempts, and customer reviews to Walmart.com—making clear that the displays were prone to cracking." Id. ¶ 69. Accepting these allegations as true and construing them in the light most favorable to Plaintiff, Defendant had a duty to disclose the Display Defect.

The Court rejects Defendant's argument that knowledge of the defect was within Plaintiff's reach or could have been discovered by the exercise of reasonable diligence because, according to the Amended Complaint, customers began posting complaints about their displays to Defendant's website "[s]oon after" it began selling the Class Devices. ECF No. 26 at 8 (quoting ECF No. 17 ¶ 80). To begin with, of the twenty-two customer reviews included in the Amended Complaint, only one of them predates Plaintiff's first purchase and only two predate his second purchase. ECF No. 25 at 16. In the light most favorable to Plaintiff, even if he had read negative reviews prior to his purchases, it would not have alerted him to the fact that all of the Class Devices contained the Display Defect. Even assuming arguendo that negative internet reviews could be deemed to impute some knowledge of the Display Defect, the Amended Complaint alleges that Defendant had superior knowledge of the Display Defect, based on return attempts and warranty claims (in addition to negative internet reviews)—events that were not within Plaintiff's reach and could not have been discovered by the exercise of reasonable diligence. See In re Macbook Keyboard Litig., Case No. 5:18-cv-02813-EJD, 2019 WL 1765817, at *7 (N.D. Cal. Apr. 22, 2019) (finding that even if the plaintiffs could have been aware of the defect based on online complaints, the defendant allegedly had superior knowledge of the defect based on product testing, patent applications, and monitoring of the online forums where customers posted complaints); Falk, 496 F. Supp. 2d at 1097 ("It is true that prospective purchasers, with access to the Internet, could have read the many complaints about the failed speedometers (as quoted in the complaint). Some may have. But GM

is alleged to have known a lot more about the defective speedometers, including information unavailable to the public.").

Because Defendant allegedly had superior knowledge of the Display Defect that was not within Plaintiff's reach and which Plaintiff could not have discovered with reasonable diligence, Defendant had a duty to disclose the Display Defect.  See id.; Falk, 496 F. Supp. 2d at 1097; see also Ponzio v. Mercedes-Benz USA, LLC, 447 F. Supp. 3d 194, 229-30 (D.N.J. 2020) (finding that the complaint plausibly alleged with particularity that the defendant had knowledge of a latent defect triggering a duty to disclose based on, inter alia, consumer complaints); Short v. Hyundai Motor Co., 444 F. Supp. 3d 1267, 1280-81 (W.D. Wash. 2020) (finding that the complaint plausibly alleged with particularity that the defendant had knowledge of a latent defect triggering a duty to disclose based on, inter alia, complaints submitted to the National Highway Transportation Safety Administration).

The Amended Complaint alleges that despite its duty to disclose, Defendant remained silent.  See ECF No. 17 ¶ 179 (alleging that Defendant "concealed and suppressed material facts concerning the Display Defect, which caused the Class Devices to become impaired, lose functionality, and become inoperable"); id. (alleging that Defendant "furthered and relied upon this lack of disclosure to promote Class Devices—all the while concealing the true nature of the Display Defect from Plaintiff and Class members").  Therefore, the Court finds that Count VI plausibly alleges fraud.

### 5.  Count VII: Unjust Enrichment

In Count VII, Plaintiff alleges that Defendant "has been unjustly enriched by Plaintiff and Class members purchasing Class Devices from Walmart and purchasing replacements and services

from Walmart that Plaintiff and Class members would not have purchased but for Walmart's misconduct . . . with respect to the Display Defect." ECF No. 17 ¶ 192.

Defendant argues that Count VII fails to state a claim because a party cannot assert an unjust enrichment claim against another party where the parties are in privity of contract, ECF No. 20 at 22-23 (citing <u>Array Tech., Inc. v. Mitchell</u>, 305 F. Supp. 3d 1256, 1276 (D.N.M. 2018); <u>Walker v. Emergency Staffing Sols., Inc.</u>, No. 16-cv-1103 SMV/GBW, 2017 WL 3206641, at *4 (D.N.M. Feb. 2, 2017) (citing <u>Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.</u>, 407 F.3d 1091, 1116-17 (10th Cir. 2005)), and the Amended Complaint alleges that Plaintiff is in privity with Defendant, <u>id.</u> at 23 (citing ECF No. 17 ¶¶ 22, 170). Defendant further argues that, in any event, Plaintiff cannot maintain a nationwide unjust enrichment claim because some states do not recognize unjust enrichment as an independent cause of action, and the law of the states that do recognize it vary. <u>Id.</u> at 23 (citing <u>Colley v. Procter & Gamble Co.</u>, Case No. 1:16-cv-918, 2016 WL 5791658, at *7-8 (S.D. Ohio Oct. 4, 2016)).

Plaintiff argues that he can pursue an unjust enrichment claim even if he is in privity with Defendant. ECF No. 25 at 21-22 (citing <u>Danley v. City of Alamogordo</u>, 577 P.2d 418, 419 (N.M. 1978); <u>Adenauer v. Conley's Landscaping, Inc.</u>, No. 30,271, 2012 WL 1719730, at *3 (N.M. Ct. App. 2012) (unpublished); <u>Starko, Inc. v. Presbyterian Health Plan, Inc.</u>, 276 P.3d 252, 278 (N.M. Ct. App. 2011), <u>rev'd on other grounds sub nom.</u>, <u>Starko, Inc. v. N.M. Human Servs. Dep't</u>, 333 P.3d 947, 956 (N.M. 2014)). He appears to argue in a footnote that he may maintain this claim because he is challenging the contract's validity as unconscionable. <u>Id.</u> at 22 n.18. Plaintiff further argues that he has asserted his unjust enrichment claim in the alternative, "and the possible availability of a remedy at law 'does not foreclose the option of pursuing a claim in equity, at least not at the motion to dismiss stage[.]'" <u>Id.</u> at 22 (quoting <u>Thornton v. Kroger Co.</u>, No. CIV 20-

1040 JB/JFR, 2022 U.S. Dist. LEXIS 29699, at *319 (D.N.M. Feb. 17, 2022), and citing Wells v. Johnson & Johnson, 554 F. Supp. 3d 1207, 1215 (W.D. Okla. 2021)).  He further argues that the issue of whether Plaintiff can pursue an unjust enrichment claim on behalf of a nationwide class is premature at the motion to dismiss stage and should be resolved at the class certification stage.  Id. (citing Raymo v. FCA US LLC, 475 F. Supp. 3d 680, 709 (E.D. Mich. 2020)).

In its Reply, Defendant maintains that "'Tenth Circuit law, interpreting New Mexico case law, establishes that a party cannot assert an unjust enrichment claim against another party where the parties are in privity of contract.'"  ECF No. 26 at 10 (quoting Walker, 2017 WL 3206641, at *4 (citing Elliott Indus., 407 F.3d at 1116-17)).  It argues that the Court is bound by the Tenth Circuit's decision in Elliott Industries because it has not been displaced by an intervening opinion by the New Mexico Supreme Court.  Id. at 11 (citing Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)).  It argues that, in fact, "the New Mexico Court of Appeals reaffirmed just a few months ago that unjust enrichment only provides relief 'in the absence of privity.'"  Id. (quoting Battishill v. Ingram, 539 P.3d 1203, 1208 (N.M. Ct. App. 2023)).

"New Mexico has long recognized actions for unjust enrichment . . . ."  Ontiveros Insulation Co., Inc. v. Sanchez, 3 P.3d 695, 698 (N.M. Ct. App. 2000).  "To prevail on such a claim, one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust."  Id.  "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity."  Id. at 698-99.

In Elliott Industries, the Tenth Circuit affirmed summary judgment in favor of the defendant on an unjust enrichment claim under New Mexico law because the parties were in privity of contract.  407 F.3d at 1117.  The Tenth Circuit appeared to approve of the "district court's

interpretation of <u>Ontiveros</u> to mean that the presence of a contract bars a claim for unjust enrichment[,]" explaining that

> the hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue. Courts have recognized this principle and have stated their unwillingness to resort to the doctrine of unjust enrichment to override a contractual [ ] provision.

<u>Id.</u> (quoting <u>Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co. of Sapulpa</u>, 130 F.3d 950, 957 (10th Cir. 1997), and citing 26 Richard A. Lord, <u>Williston on Contracts</u> § 68:5 (4th ed. 2004) ("Where the plaintiff has no alternative right on an enforceable contract, the basis of the plaintiff's recovery is the unjust enrichment of the defendant."). The Tenth Circuit held that the plaintiff's unjust enrichment claim failed "because the claim . . . is grounded in the parties' contractual relationship." <u>Id.</u>

Thus, as summarized by United States Circuit Judge Paul Kelly, Jr., sitting by assignment in the United States District Court for the District of New Mexico: "As a general rule, a party may not recover on an unjust enrichment theory when an enforceable contract remedy exists." <u>U.S. for use of Sierra Canyon Constr., LLC v. Markel Ins. Co.</u>, No. 1:21-cv-00974-PJK-SCY, 2022 WL 541032, at *2 (D.N.M. Feb. 23, 2022). Judge Kelly observed that several district court decisions "have dismissed unjust enrichment claims at the pleading stage where a plaintiff has not pled that contract remedies are inadequate or unavailable." <u>Id.</u> (citing <u>Armijo v. FedEx Ground Package Sys., Inc.</u>, 285 F. Supp. 3d 1209, 1217 (D.N.M. 2018); <u>Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC</u>, CV 15-00218 WJ/CG, 2015 WL 12803775, at *3–5 (D.N.M. June 25, 2015); <u>Abraham v. WPX Energy Prod., LLC</u>, 20 F. Supp. 3d 1244, 1272–78 (D.N.M. 2014)). However, because (1) "New Mexico courts have consistently employed unjust enrichment remedies (and appear not to have adopted such a pleading rule)," (2) the Federal Rules of Civil Procedure permit

pleading claims in the alternative, and (3) "[r]ecovery is uncertain on either the contract or unjust enrichment claim[,]" Judge Kelly denied the defendant's motion to dismiss an unjust enrichment claim pled in the alternative to contractual remedies.  Id.

The Court agrees with Judge Kelly that permitting a plaintiff to plead an unjust enrichment claim in the alternative to remedies at law is permissible.  See id.  See also Thornton, 2022 U.S. Dist. LEXIS 29699, at *319 ("'[W]hether a plaintiff has an 'adequate remedy at law' does not foreclose the option of pursuing a claim in equity, at least not at the motion to dismiss stage.'") (quoting Abraham, 20 F. Supp. 3d at 1281).  "[U]njust enrichment is widely accepted as an alternative theory of recovery, should the factfinder determine that no contract between the parties exists." Strobel v. Rusch, 431 F. Supp. 3d 1315, 1331 (D.N.M. 2020) (quoting Qwest Corp. v. City of Santa Fe, No. 10–CV–0617 RB/KBM, 2013 WL 12241274, at *12 (D.N.M. Feb. 8, 2013)). "This is illustrated by the fact that New Mexico's state rules explicitly allow for alternative pleading of civil claims."  Id. (quoting Qwest Corp., 2013 WL 12241274, at *12).  However, Plaintiff "may not recover doubly if the contract is found to be enforceable."  Id. (citing Qwest Corp., 2013 WL 12241274, at *12).

As to Defendant's argument that variations in state laws preclude Plaintiff from pursuing an unjust enrichment claim on behalf of a nationwide class, the Court finds that this issue is more appropriately analyzed under Rule 23 at the class certification stage.  As the New Mexico Supreme Court has observed:

> {12} Class actions involving plaintiffs from multiple states present particular challenges for district courts, and may "implicate the predominance and superiority requirements . . . because of the combination of individual legal and factual issues that need to be determined." 7AA Charles Alan Wright et al., Federal Practice and Procedure § 1780.1, at 202 (3d ed.2005). If too many separate state laws must be applied, then the class proponent may have a difficult time persuading the district court that common questions of law predominate and that a class action is the

48

superior method of litigation. <u>See</u> <u>Castano</u>, 84 F.3d at 741 ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."). A determination that the district court will have to apply the laws of multiple states also impacts the court's ability to manage the proposed class. <u>See</u> Rule 1–023(B)(3)(d);[2] <u>Berry</u>, 2004–NMCA–116, ¶ 51 ("[I]f the forum state decides to apply the law of other states, the court must consider the difficulty of managing the trial of sub-classes to the same jury."); 7AA Wright et al., <u>supra</u>, § 1780.1, at 211 ("[C]ourts also have found that the class device is not a superior method to adjudicate the claims [of a multi-state class] because differences in state law make the action unmanageable.").

{13} A decision to apply the laws of several states does not, however, necessarily foreclose class certification. A court may be able to manage a class through the use of subclasses or by grouping certain issues together that can be resolved by applying one state's law. <u>See</u> <u>In re Sch. Asbestos Litig.</u>, 789 F.2d 996, 1011 (3d Cir. 1986) (affirming class certification under Rule 23(b)(3) because, even though "manageability [was] a serious concern, . . . [m]anageability is a practical problem, one with which the district court generally has a greater degree of expertise and familiarity than does an appellate court").

{14} Thus, a certifying court must first determine which law will apply to the class so that it can then assess the predominance and superiority of the proposed class action. <u>See</u> <u>Wash. Mut. Bank, FA v. Super. Ct.</u>, 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1077 (2001) ( "Discerning the applicable law is an important task in class actions, for if the claims of nonresident class members will require adjudication under the laws of the members' home states, the trial court must ascertain the degree of complexity arising from the need to apply those laws in order to make an informed decision on certification."). Plaintiffs bear the initial burden of producing evidence of the various states' laws and demonstrating "'that class certification does not present insuperable obstacles.'" <u>Walsh v. Ford Motor Co.</u>, 807 F.2d 1000, 1017 (D.C. Cir.1986) (quoting <u>In re Sch. Asbestos Litig.</u>, 789 F.2d at 1010). If the defendant wishes to contest the plaintiff's characterization of the laws of the relevant states, the defendant must "inform the district court of any errors they perceive." <u>Berry</u>, 2004–NMCA–116, ¶ 80. If the defendant fails to bring any "'clearly established' contradictory law" to the court's attention, the district court cannot be faulted if it concludes that the laws of the jurisdictions connected to the dispute do not conflict such that a single state's law may be applied to the entire class. <u>Id.</u> (quoting <u>Sun Oil Co. v. Wortman</u>, 486 U.S. 717, 730–31, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988)).

<u>Ferrell v. Allstate Ins. Co.</u>, 188 P.3d 1156, 1163-64 (N.M. 2008).

---

[2]     The New Mexico Rule of Civil Procedure governing class actions, Rule 1-023, "mirrors" Federal Rule of Civil Procedure 23, "upon which it is based."  <u>Ferrell v. Allstate Ins. Co.</u>, 188 P.3d 1156, 1162 (N.M. 2008).

This Court is aware that "[c]ourts in the Tenth Circuit have noted 'that differences among state law definitions of unjust enrichment and its availability as a remedy[,] make federal courts, in general, reluctant to certify a nationwide class on this theory.'" In re HomeAdvisor, Inc. Litig., 345 F.R.D. 208, 232 (D. Colo. Jan. 10, 2024) (quoting In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig., MDL No. 2785Case No. 17-md-2785-DDC-TJJ, 2020 WL 1873989, at *57 (D. Kan. Feb. 27, 2020) (citing Thompson v. Jiffy Lube Int'l, Inc., 250 F.R.D. 607, 626 (D. Kan. 2008))). However, as the Supreme Court of New Mexico observed in Ferrell, class certification may be possible despite differences in state laws. 188 P.3d at 1163-64. Because Plaintiff could ultimately demonstrate a manageable way to address the variations in state laws at the class certification stage, the Court denies Defendant's Motion to Dismiss the unjust enrichment claim. In re: McCormick & Co., Inc., 217 F. Supp. 3d 124, 140 (D.D.C. 2016) (denying motion to dismiss a nationwide class action unjust enrichment claim for variations in state laws, finding that the plaintiffs "could demonstrate a manageable grouping of the state laws").

IV.    **Conclusion**

Therefore, it is **HEREBY ORDERED** that:

1.  Defendant Walmart Inc.'s Motion to Dismiss Plaintiff's First Amended Class Action Complaint, ECF No. 20, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

2.  All claims concerning products that Plaintiff did not purchase—and specifically, the 7-inch and 10.1-inch models of the Surf Tablet Pro, and model-year 2021 tablets—are **DISMISSED** for lack of standing;

3.  Count I is **DISMISSED without prejudice** for failure to state a claim;

4. Counts II and III are **DISMISSED with prejudice** because Plaintiff abandoned them; and

5. Defendant shall have **FOURTEEN DAYS** from the date of this Order to file an Answer to Plaintiff's Amended Complaint.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

51